IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

REGENT BANK,

    Plaintiff,

v.

SAMUEL BODEA and SIMONA BODEA,

    Defendants.

Case No. 3:24-cv-05077-DPR

# COMPLAINT

Plaintiff Regent Bank ("**Plaintiff**"), for its complaint (the "**Complaint**") against Samuel Bodea and Simona Bodea (the "**Borrowers**" or "**Defendants**", and each individually, a "**Borrower**" or "**Defendant**"), states as follows:

## Statement of the Case

1. Borrowers are currently indebted to Plaintiff for an amount in excess of $9,500,000.00 advanced over a span of nearly four (4) years in connection with the acquisition and construction of improvements at a 45,000 square foot facility located on 108 acres overlooking Table Rock Lake.

2. The obligations to Plaintiff are secured by, among other things, (a) a Construction Deed of Trust With Future Advances and Future Obligations Governed by Section 443.055 RS Mo. executed by Borrowers in favor of Plaintiff, encumbering the real property and improvements as described therein and (b) a Commercial Security Agreement dated August 1, 2022 executed by Borrowers and Samuel Bodea d/b/a SS Express, LLC granting to Plaintiff a security interest in all of the collateral as described and defined therein (hereinafter the "**Personal Property Collateral**").

3. This action arises out of Defendants' breach of their obligations under the Deed of Trust[1], Commercial Security Agreement, and Construction Loan Agreement as well as their failure to pay Plaintiff under the Note.

4. The Note has matured, and Defendants cannot repay Plaintiff, nor can they make payments of interest at a market rate.

5. In addition, Defendants have, in violation of the terms of the Construction Loan Agreement:

    a. refused to cooperate and coordinate with Plaintiff's employees and agents to facilitate inspections of the Real Estate for which construction is not complete and the cost of completion easily exceeds $5,000,000.00;

    b. refused to cooperate with Plaintiff in connection with a plan to complete the Project;

    c. refused to provide Plaintiff with the tax returns and personal financial statements as required;

    d. refused to engage a general contractor, while terminating multiple general contractors over the years; and

    e. continued to engage subcontractors to perform work on the Project, notwithstanding express instructions from Plaintiff to the contrary, subjecting the Project mechanics lien claims which could take priority over Plaintiff's security interest without its consent.

---

[1] Capitalized terms are defined in the Facts section of the Complaint.

6. The Project currently contains building materials of substantial value, and extensive personal property all of which are readily movable and easily damaged by misuse.

7. The incomplete nature of the Project is such that there is considerable risk of damage and deterioration from the elements.

8. Accordingly, in addition to seeking judgment for breach of the Note against Defendants, Plaintiff seeks the expedited appointment of a general receiver in accordance with Mo. Rev. Stat. §§ 515.550 et seq. (the "**Missouri Commercial Receivership Act**" or "**MCRA**"), the Loan Documents and Rules 66 and 64(a) of the Federal Rules of Civil Procedure, in order to take control of the Project and all personal property contained therein and subject to the Commercial Security Agreement, assess the cost to complete, to exclude Defendants from the Project, to evaluate and secure the personal property and building materials, and, following that assessment, either implement an organized sale process or proceed with foreclosure under the Deed of Trust and Commercial Security Agreement.

## Parties

9. Plaintiff is an Oklahoma state-chartered bank with its main office at 7136 S. Yale, Suite 100, Tulsa, Oklahoma 74136.

10. Defendant Samuel Bodea is an individual and citizen of the state of Missouri, and currently resides at 2866 State Hwy DD, Reeds Spring, MO 65737, but upon information and belief formerly resided at 3820 W. Happy Valley Road, Glendale AZ 85310.

11. Defendant Simona Bodea is an individual and citizen of the state of Missouri, and currently resides at 2866 State Hwy DD, Reeds Spring, MO 65737, but upon information and belief formerly resided at 3820 W. Happy Valley Road, Glendale AZ 85310.

## Jurisdiction and Venue

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000. There is also complete diversity between Plaintiff and Defendants. Plaintiff is a citizen of Oklahoma. Borrowers Samuel and Simona Bodea are either citizens of Missouri, or Arizona.

13. The Court has personal jurisdiction over Defendants because this action arose from, and is connected with, Defendants continuous and systematic activities in Missouri and in this District. Defendants directly and intentionally transacted business in this district with respect to the matters at issue in this lawsuit, a substantial part of the events giving rise to and at issue in this lawsuit occurred in this district.

14. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and the property subject to this action is located in this district.

## Facts

**A. The Loan Documents**

15. On or about December 8, 2020, Defendants applied for a commercial loan in the amount of $2,000,000 to acquire the Project (the "**Acquisition Loan**").

16. On or about May 27, 2021, Borrowers applied for a construction line of credit in the amount of $3,050,000 (the "**Line of Credit Loan**")

17. On or about June 3, 2022, Borrowers requested that Plaintiff combine the Acquisition Loan and Line of Credit Loan into a new loan for $8,850,000 and advance funds in

excess of the payoff on the Acquisition Loan and the Line of Credit Loan to "finish construction" of the Project (hereinafter, the "**Combined Loan**").

18. On August 1, 2022, Borrowers and Plaintiff entered into a Construction Loan Agreement (the "**Construction Loan Agreement**") evidencing the Combined Loan in the amount of $8,850,000.00 and Borrowers executed a certain Promissory Note dated August 1, 2022, in the original amount of $8,850,000.00 in favor of Lender (the "**Combined Note**"). A true and correct copy of the Construction Loan Agreement and Combined Note are attached hereto and incorporated by reference herein as Exhibit A and Exhibit B, respectively.

19. On or about February 1, 2024, Plaintiff agreed to increase the Combined Loan to the amount of $9,200,000.00 (the "**Loan**") and extend the maturity date of the Note pursuant to the terms of that certain Change in Terms Agreement executed by Borrowers on February 1, 2024 (the "**CIT**", together with the Combined Note, the "**Note**"). A true and correct copy of the CIT is attached hereto and incorporated by reference herein as Exhibit C.

20. The obligations under the Note are secured by, among other things, a Construction Deed of Trust With Future Advances and Future Obligations Governed by Section 443.055 RS Mo. dated August 1, 2022, recorded August 2, 2022 in the office of the Stone County Recorder of Deeds in Book 2022 Page 11173, as subsequently amended and modified by a recording February 20, 2024 in the office of the Stone County Recorder of Deeds in Book 2024 Page 1601 (the "**Deed of Trust**"), executed by Borrowers in favor of Plaintiff encumbering the approximately 108 acres of real property and the improvements as described therein and commonly known as 2866 State Highway DD, Reed Springs, MO 65737 (the "**Project**"). A true and correct copy of the Deed of

5
Case 3:24-cv-05077-RK Document 1 Filed 09/18/24 Page 5 of 16

Trust and Modification to Deed of Trust are attached hereto and incorporated by reference herein as Exhibit D and Exhibit E respectively.

21. The obligations under the Note are also secured by a Commercial Security Agreement dated August 1, 2022, executed by Borrowers and Samuel Bodea d/b/a SS Express, LLC granting to Plaintiff a security interest in all of the Personal Property Collateral (the "**Commercial Security Agreement**"). A true and correct copy of the Commercial Security Agreement is attached hereto and incorporated by reference herein as Exhibit F.

22. Samuel Bodea is the sole member and managing member of SS Express LLC, an Arizona limited liability company engaged in the trucking business and pursuant to the Commercial Security Agreement granted to Plaintiff a security interest in certain vehicles and assets owned by SS Express LLC.

23. Plaintiff properly perfected its security interests in the Personal Property Collateral pledged by Samuel Bodea as and Simona Bodea, among other things, filing a UCC-1 financing statement with the Missouri Secretary of State evidencing its liens (collectively, the "**Missouri Financing Statement**"). A true and correct copy of the Missouri Financing Statement is attached hereto as Exhibit G and incorporated herein by reference.

24. Plaintiff has also perfected a security interest in certain vehicles and assets of SS Express LLC by registering a lien on the vehicles through the Arizona Department of Motor Vehicles and filing financing statements with the Arizona Secretary of State (the "**Arizona Financing Statements**"). True and correct copies of the Arizona Financing Statements and the proof of filing with the Arizona Department of Motor Vehicles are attached hereto as Exhibit H and Exhibit I and are incorporated herein by reference.

25. Accordingly, Plaintiff holds a valid and properly perfected first-priority security interest in and lien on the Personal Property Collateral and the Project.

**B.     Defendants' Financial Condition Deteriorates and They Default on the Note.**

26. In February 2024, Borrowers sought additional funds and an extension of the maturity date of the Combined Loan, ostensibly to complete the Project and market same for sale.

27. As set forth in Paragraph 19 above, on February 1, 2024, Plaintiff, pursuant to the CIT, advanced to Defendants an additional $350,000 and extended the maturity date to August 1, 2024.

28. Almost immediately, Defendants defaulted under the terms of the Note as a result of the failure to make the payment due on March 10, 2024.

29. On or about June 13, 2024, Plaintiff sent a Notice of Default and Right to Cure Letter to Defendants (the "**Cure Letter**"). A true and correct copy of said Cure Letter is attached hereto and incorporated by reference as Exhibit J.

30. Defendants failed to cure their default and despite efforts by Plaintiff, Defendants refused to make any payments or enable Plaintiff to secure reasonable protections in exchange for a forbearance agreement.

31. On July 1, 2024, following Borrowers failure to cure the defaults, Plaintiff made demand upon Borrowers for the entire balance due under the Note (the "**Demand Letter**"). A true and correct copy of the Demand Letter is attached hereto and incorporated by reference herein as Exhibit K.

32. As such, Borrowers were required to pay the Loan and all obligations in full pursuant to the terms set forth in the Construction Loan Agreement and Note but have still failed to do so.

33. As of August 15, 2024, there is due and owing from Defendants to Plaintiff at least $9,515,648.09, which includes principal in the amount of $9,197,608.72, late fees of $14,191.25 and accrued and unpaid interest in the amount of $303,848.52 and is exclusive of other costs and fees that Plaintiff is entitled to under the Note. Interest and fees continue to accrue on the Note.

**C.     Imminent Danger Exists of Borrowers' Financial Collapse and the Dissipation of the Collateral.**

34. Borrowers' financial outlook is bleak. They have negative equity and have little cash on hand. Borrowers are unable to pay their multi-million-dollar obligations to Plaintiff, and given the aforementioned defaults, Plaintiff has no further obligation to and will not continue funding the Project.

35. There is significant risk of mechanics liens, diminished value, disappearance of building materials, damage to the improvements and theft of personal property.

36. Absent the appointment of a receiver, Plaintiff may exercise its rights and remedies under the Construction Loan Agreement, Note, Commercial Security Agreement and Deed of Trust (collectively, the "**Loan Documents**") including, without limitation, foreclosing on the Project and seeking a replevin order with respect to the Personal Property Collateral and taking any other enforcement actions under the Loan Documents and applicable law. If a receiver is appointed, however, Plaintiff can protect and preserve the Project, develop a budget for completion and market the Project on terms agreed upon by Plaintiff and the appointed receiver.

37. In light of Borrower's failure to provide current financial statements, statements of income and/or cash flow, Plaintiff assumes that Borrowers have no sources of capital or financing to service the indebtedness to Plaintiff or complete the Project.

38. The Project is also in imminent danger of diminution in value due to Borrowers' mismanagement, misrepresentations, inability to protect the improvements from the elements and concealment of information. As such, a receiver is also necessary to oversee and take control of the Project to protect it for the benefit of Plaintiff.

39. The Project's value will be maximized if marketed (a) by a Receiver with a comprehensive plan and cost of completion and (b) without interference by the Borrowers.

40. Further, continuing to leave the Borrowers in possession of the Project not only increases the risk of diminished value as a result of unpaid contractors and/or suppliers, damage to incomplete structures from the elements, but also the risk of harm or disappearance of personal property collateral which is highly portable and easily damaged by misuse.

41. Finally, the approaching winter months only hastens the need to protect the incomplete items whose structural integrity will be compromised without proper precautions.

## COUNT ONE

### Breach of the Note

42. Plaintiff incorporates herein each and every allegation of paragraphs 1 through 41 of this Complaint.

43. The Construction Loan Agreement is a valid and enforceable contract between Plaintiff and Borrowers, and the funds contemplated by the Combined Note have been fully advanced.

44. Borrowers have defaulted on their obligations under the Construction Loan Agreement and Note as a result of, among other things, the failure to make payments, and the Note has now matured by its terms.

45. All principal, interest, and other indebtedness outstanding under the Note is currently due and payable.

46. Borrowers have not paid the amounts outstanding despite Plaintiff's demands.

47. Plaintiff is entitled to repayment of all amounts outstanding under the Construction Loan Agreement and Note, plus court costs and expenses (including attorney's fees) incurred by Plaintiff in connection with this proceeding.

48. As of August 15, 2024, there is due and owing from Defendants to Plaintiff at least $9,515,648.09, which includes principal in the amount of $9,197,608.72, late fees of $14,191.25 and accrued and unpaid interest in the amount of $303,848.52 and is exclusive of other costs and fees that Plaintiff is entitled to under the Note. Interest and fees continue to accrue on the Note.

## COUNT TWO
### Appointment of Receiver

49. Plaintiff incorporates herein each and every allegation of paragraphs 1 through 48 of this Complaint.

50. Federal Rule of Civil Procedure 66 authorizes the appointment of a receiver, which is governed by federal law in a diversity case. *See* Fed. R. Civ. P. 66.

51. In deciding whether to appoint a receiver, courts in the Eighth Circuit consider certain factors, including: (1) validity of the claim of the party seeking appointment; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) imminent danger that the property will be concealed, lost, or diminished in value; (4) inadequacy of legal

remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointing the receiver will do more good than harm. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993). "It is well settled that proof of fraud is not required to support a district court's discretionary decision to appoint a receiver." *Id*. at 317 (citations omitted).

52. Federal Rule of Civil Procedure 64(a) provides at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. Thus, Plaintiff asserts that Missouri law permits the appointment of a receiver upon demonstrating the right to appoint a receiver under Rule 66 and that such order may be an order appointing a receiver pursuant to the MCRA.

53. Pursuant to the MCRA, the Court has the power to appoint a general receiver to take possession and control over the Borrowers and all or substantially all of the Borrowers' property, including the Project and Personal Property Collateral, and authorize the receiver to liquidate such properties.

54. Plaintiff also asserts the right to appoint a receiver under the MCRA under the express terms of the Deed of Trust and Commercial Security Agreement.

55. Pursuant to the MCRA, the Court has the power to appoint a receiver in several instances, including:

> (2) In an action in which the person seeking appointment of a receiver has a lien on or interest in property or its revenue-producing potential, and either: (a) The appointment of a receiver with respect to the property or its revenue-producing potential is necessary to keep and preserve the property or its revenue-producing potential or to protect any business or business interest concerning the property or its revenue-producing potential; or (b) The appointment of a receiver with respect to the property or its revenue-producing potential is provided for by a valid and enforceable contract or contract provision; or (c) The appointment of a receiver is necessary to effectuate or enforce an assignment of rents or other revenues from the property;

(9) In an action against any entity if that person is insolvent or is not generally paying the entity's debts as those debts become due unless they are the subject of bona fide dispute;

(12) Pursuant to the terms of a valid and enforceable contract or contract provision providing for the appointment of a receiver...;

(14) To prevent irreparable injury to the person or persons requesting the appointment of a receiver with respect to the debtor's property.

Mo. Rev. Stat. §515.510

56. The factors here overwhelmingly support appointment of a receiver over Borrowers, the Project and the Personal Property Collateral.

    a. First, Plaintiff has a valid claim arising from the non-payment of the significant debt owed by Defendants under the Note. Borrowers breached the Construction Loan Agreement by their failure to provide plan and specifications as required, failure to provide a detailed budget, failure to provide annual statements and tax returns and failure to cooperate in facilitating timely inspections. It is undisputed that Events of Default have occurred under the Construction Loan Agreement and Note, and it is undisputed that Defendants have not paid and cannot pay the amounts presently due and owing Plaintiff.

    b. Second, there is an imminent danger that the Personal Property Collateral will be concealed, lost, or diminished in value. Borrowers' financial condition is dire, and, in the absence of a receivership, there is a high probability Borrowers will begin to sell off excess building materials and the personal property at the Project, incur indebtedness resulting in the possibility of mechanics liens and/or leave the Project exposed to the elements.

    d. Third, the principal legal remedy available to Plaintiff – foreclosure and replevin– is inadequate. For the reasons noted above, it would likely result in a disorganized

sale process that will result in a reduced "fire-sale" price for the Project that will certainly yield less than the value obtainable through an orderly sale process managed by a receiver[ and (b) the expense of securing and removal of the Personal Property Collateral will diminish its value, as much of such Personal Property Collateral is of greater value if incorporated into the Project.

  e. Fourth, while Plaintiff does not allege fraud in its traditional sense, the Borrowers did in fact submit plans and specifications for the Project which induced Plaintiff to advance funds and then expended the funds for other purposes inconsistent with the plans.

  f. Fifth, no less drastic remedy exists. As noted above, the legal remedy of foreclosure is more drastic and likely to result in less value than a receiver-led sale.

  f. Finally, appointment of a receiver will do more good than harm, given the likelihood of increased value to be obtained by the sale, rather than through a foreclosure. Furthermore, giving the Receiver control over the Project will alleviate the issues being caused by Defendants' lack of oversight, gross mismanagement, and use of funds inconsistent with the plans for completion of the Project.

56. Accordingly, pursuant to Rule 66 of the Federal Rules of Civil Procedure and Mo. Rev. Stat. § 515.510.1(2), (9), (12), and (14), the appointment of a receiver is necessary to keep and preserve the Project and to prevent irreparable injury, loss and damage to the Plaintiff.

57. On account of the foregoing, and as provided for in Fed R. Civ. P. 66 and 64(a), and Mo. Rev. Stat. §§ 515.500, *et. seq.*, the immediate appointment of a receiver for the Project and the Personal Property Collateral is necessary to (a) take possession and control of the Project, (b) preserve the Project and Personal Property Collateral, (c) take all actions authorized by the Court for the benefit of Plaintiff, and (d) satisfy the claims of Plaintiff alleged herein.

58. Plaintiff further requests that, in addition to the authority and powers of a general receiver pursuant to the MCRA, the appointed receiver have the authority and power to:

 a. establish and adopt bidding and auction sale procedures for the sale of the Project, as the receiver deems advisable or necessary, subject to the prior written agreement of Plaintiff without further order of this Court;

 b. borrow and incur secured debt in the ordinary course of preserving and securing the Project, with liens attaching to the sale proceeds of the Project or a super priority basis, without further order of this Court, provided (i) such secured debt may only be advanced by Plaintiff, in Plaintiff's sole discretion, and such amounts incurred may, among other things, be chargeable to Borrowers under the Loan Documents; and (ii) to the extent such secured debt is incurred, the receiver shall provide an accounting on a monthly basis of amounts incurred; and

 c. employ professionals as the receiver deems advisable or necessary, including accountants, attorneys, investment bankers and similar professionals ("**Professionals**"). Provided, however, employment of Professionals is subject to Plaintiff's prior written agreement and consent and all of the terms and conditions set forth in the Receivership Order.

59. Contemporaneously herewith, Plaintiff has filed a Motion for the appointment of a receiver for Samuel Bodea and Simona Bodea, the Project and the Personal Property Collateral. with Suggestions in Support (the "Motion") and a proposed receivership order (the "Receivership Order"), requesting among other things, the appointment of Jon Tatum (the "**Receiver**") of Tatum Associates as receiver to take control of Borrowers and their assets and assess whether a structured sale of Borrowers assets would maximize value, and following that assessment, implement an organized sale process of the Borrowers assets. Receiver is not a person interested in this action or

a party or attorney involved in this action. A description of Receiver's qualifications is attached hereto as Exhibit L.

60. Receiver is willing to post a $10,000 bond in connection with the appointment of a receiver.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment in its favor as follows:

(a) on Count One, against Borrowers in the amount then due and owing under the Loan Agreement, which as of August 15, 2024 is not less than $9,515,648.09, and per diem interest and fees from the date this Complaint was filed, as well as court costs and expenses (including attorney's fees) incurred by Plaintiff in connection with this proceeding;

(b) on Count Two, that Receiver be appointed effective immediately as receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure and the MCRA to take possession and control of Borrowers' assets and take such other and further action as is authorized by orders of this Court; and

(c) for such other and further relief to which Plaintiff may be entitled in equity or at law.

Dated: September 18, 2024                    Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: */s/ Wendi Alper-Pressman*
    Wendi Alper-Pressman    #32906
    John H. Chassaing       #68712
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    314.621.5070
    314.621.5065 (facsimile)
    walperpressman@atllp.com
    jchassaing@atllp.com

ATTORNEYS FOR REGENT BANK